IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**UMMS AMBULATORY CARE, LLC,**
250 West Pratt Street
24th Floor
Baltimore, Maryland 21201

      Plaintiff,

      v.

**EXPERITY, INC.**
8777 Velocity Drive
Machesney Park, Illinois 61115

      *Serve On:*
      Corporation Service Company,
      Registered Agent
      251 Little Falls Drive
      Wilmington, Delaware 19808

      Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff UMMS Ambulatory Care, LLC d/b/a UM Urgent Care ("UM Urgent Care") brings this action for damages against Defendant Experity, Inc. ("Experity") and alleges as follows:

### INTRODUCTION

1.     UM Urgent Care seeks damages for the substantial harm caused by Experity's repeated, intentional, willful, and knowing breaches of its contractual obligations to UM Urgent Care and Experity's repeated, intentional, willful, and knowing efforts to conceal those breaches so UM Urgent Care would not discover them.

2.      Urgent care facilities provide on-demand medical treatment for non-life-threatening medical conditions, an integral component of healthcare in the United States.  Urgent care facilities provide efficient and timely healthcare services by allowing patients to receive medical care on a walk-in basis, often during extended hours, including evenings and weekends.  Urgent care thus fills the critical gap between the planned, long-term care offered by primary care providers and the emergent care offered in emergency rooms.

3.      To remain viable, urgent care facilities, like other healthcare providers, must bill and collect for their services.

4.      Urgent care billing involves many similarities and certain inherent differences from that of primary care groups, hospitals, and emergency room care. Many urgent care patients are first-time, non-repeat patients and urgent care clinics generally do not have a pre-registration process, as a result of the walk-in nature of appointments.  Like most other healthcare providers, sources of payment include private insurance, self-pay patients, Medicare, Medicaid, and other government payment sources.

5.      Experity offers its services to urgent care centers as a means of outsourcing billing and collections services to a third party professional that specializes in urgent care revenue cycle management.  Experity's revenue cycle management services include data entry, transmission of claims to payers, monitoring of payments received and outstanding claims, addressing rejected or underpaid claims, ensuring that all claims are properly, fully, and timely paid, and

reporting accurately to the client on all claims and services being rendered. Experity marketed its revenue cycle management services and software to UM Urgent Care as a means of maximizing UM Urgent Care's revenue.

6.  UM Urgent Care relied on representations made by Experity that Experity would perform its revenue cycle management obligations to UM Urgent Care competently, in good faith, and in accordance with its obligations.

7.  Based on these representations, on February 28, 2020, UM Urgent Care entered into a contract with Experity, drafted solely by Experity and titled the Master Service and License Agreement (as amended, the "Agreement," attached as Exhibit 1), with an addendum titled the "Supplemental Terms for Revenue Cycle Management Services Addendum" (the "RCM Addendum," attached as Exhibit 2), and a Service Order (the "Service Order," attached as Exhibit 3).

8.  The Agreement, RCM Addendum, and Service Order obligated Experity to provide revenue cycle management services to UM Urgent Care.

9.  UM Urgent Care performed all of its obligations under the Agreement, RCM Addendum, and Service Order.

10.  Experity failed to perform material obligations imposed on it by the Agreement and Service Order, including the following:

- **Failure to timely submit claims.**  Experity failed to timely submit claims for which UM Urgent Care provided all necessary information.

- **Below rate payments.**  Experity failed to collect full rates for many claims, instead accepting payments for less than applicable rates, with knowledge that the payments accepted were lower than the applicable rates.

- **Failure to timely submit COVID claims.**  Experity failed to timely submit accurate claims under the federal government's Health Resources & Services Administration's COVID Uninsured Program, despite knowing that it had failed to submit appropriate claims.

- **Failure to submit claims to United Healthcare.**  Experity failed to timely submit a number of claims to insurer and payer United Healthcare, which claims were never paid, despite Experity's having all necessary information to submit full and valid claims.

- **Failure to pursue underpayments.**  Experity failed to collect full amounts due, with knowledge that it had received only partial payment for certain claims.

- **Inaccurate, misleading reporting.**  Experity's periodic reporting to UM Urgent care was inaccurate and misleading, intentionally preventing UM Urgent Care from identifying Experity's breaches of its contractual obligations.

11.     Experity's breaches caused UM Urgent Care harm, in amounts, on information and belief, well in excess of $700,000.

12.     Experity intentionally or acting with gross negligence concealed its repeated breaches from UM Urgent Care, further breaching its contractual obligations to UM Urgent Care.

13.     Experity periodically reported on its performance to UM Urgent Care. Experity's reporting intentionally, knowingly, willfully, or with gross negligence concealed and omitted critical information.  Experity concealed and omitted this information with the intent to mislead UM Urgent Care, or acting with gross negligence.  Experity's concealment of material information misled UM Urgent Care about Experity's performance, causing UM Urgent Care to believe that Experity had complied with its obligations, when, in fact, Experity had not.

14.     Experity's intentional or grossly negligent concealment of its repeated breaches prevented UM Urgent Care from learning of the existence and extent of Experity's violations of the Agreement and Service Order.

## PARTIES

15.     UMMS Ambulatory Care, LLC is a Maryland corporation, headquartered in Maryland.

16.     Experity, Inc. is a Delaware corporation, headquartered in Machesney Park, Illinois.

## VENUE AND JURISDICTION

17.     The Court has subject matter jurisdiction over UM Urgent Care's claims under 28 U.S.C. § 1332.

18.     The Court has personal jurisdiction over Defendant Experity because, at all relevant times, Experity purposefully availed itself of the privilege of doing business in the State of Maryland by entering into the Agreement, RCM Addendum, and Service Order, and by providing services to UM Urgent Care in Maryland.  Moreover, the causes of action pled in this Complaint arise directly from Experity's actions causing injury in the State, specifically its breach of the Agreement, RCM Addendum, and Service Order with UM Urgent Care and its efforts to conceal its breaches.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103.  The causes of action pled in this Complaint arise directly from Experity's transacting of business and cause of tortious injury in the State, specifically its breach of the Agreement and Service Order with UM Urgent Care and its efforts to conceal its

breaches.  *See id*.  Experity furthermore consented to the jurisdiction of Courts situated in the State of Maryland by agreeing that any and all causes of action between the parties would be brought exclusively in the state or federal courts located in the State of Maryland.

19.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b)(2) and Md. Code Ann. § 6-201(b), because a substantial part of the events or omissions giving rise to UM Urgent Care's claims occurred in this judicial district.  Venue is further proper in the Court because the parties consented to venue in the state or federal courts located in Maryland.

## FACTUAL BACKGROUND

**I.     Experity represented that its software and services provide a comprehensive, effective solution for maximizing returns for urgent care revenue cycle management.**

20.     Experity is a software and services company for on-demand healthcare revenue cycle management, in the U.S. urgent care market.

21.     Experity is an experienced licenser of proprietary software that it represents is an "Operating System Designed For Urgent Care."  Experity supplements its proprietary software with support provided by its in-house, trained staff.

22.     Experity expressly guaranteed to UM Urgent Care that it would achieve industry-leading results.

23.     At the time UM Urgent Care entered into its agreement with Experity, Experity represented, among many other representations, as follows:

- Experity's proprietary software and accompanying Experity support would "Optimize [providers'] revenue."

- "Complexities around urgent care coding, billing, payer contracts, and compliance often prevent clinics from getting the reimbursement they deserve. It shouldn't be so hard to get paid. Work with our team of experts and a slate of RCM service options to make billing easier—and help you optimize your revenue. You take care of patients…we take care of the rest!®"

- Experity's "[b]est practices improve results (and keep you compliant)."

- "Our RCM experts use smart solutions and best practices to stay on top of your revenue cycle and reimbursement for your urgent care center."

- "Consistent standard operating procedures and an incentive to be efficient result in fast, clean collections, and give you more control and scalability."

- "Proactive Account Management:  We look forward, anticipating the needs of our clients and preventing revenue cycle surprises."

- "Full Accountability & Data Transparency:  It's your business and your data. We share what we learn to help you be more successful."

- "Know the score.  You need the right data to optimize your bottom line. With your monthly RCM Scorecard, you get full transparency into the metrics. See where you are—and where you should be. As our partner, you'll always know the score."

- "Optimize your revenue. Let's talk about expedited reimbursement. Talk to an Experity Revenue Cycle Management Sales Specialist today: 866-816-2205 or schedule a demo."

- "A Partner You Can Believe In: When we ask for your business, we're really asking for your trust."

- "We're urgent care experts who have earned the trust of more than 5,800 clinics nationwide.  Take a look at what our clients have to say about working with our team and connect with us to find out how you can experience the success that comes from partnership with people who know urgent care."

- "Investing in Client Success: We really do want you (and your patients) to be happy.  If your software simplifies the delivery of

healthcare, it's good for providers, staff—and your patients.  We work with clients one-on-one, providing reliable, consistent, proactive urgent care solutions, based on your concerns and supported by data. If you're not happy, our work's not done."

- "Get to know Experity.  Our complete suite of software and services was created to help clients build stronger companies, increase provider satisfaction, and deliver better outcomes for patients."

- "Partnership:  We believe that strong partnerships are the foundation for growth and innovation. Together, we're better."

[https://web.archive.org/web/20200228075025/https://www.experityhealth.com/,

https://web.archive.org/web/20200620235526/https://www.experityhealth.com/reven

ue-cycle-management/,

https://web.archive.org/web/20200620235417/https://www.experityhealth.com/why-

experity/]

24.     In entering into the Agreement, RCM Addendum, and Service Order

UM Urgent Care reasonably relied on representations by Experity to this effect.

25.     Experity continues to represent that it provides an integrated

operating system and accompanying support that together provide complete

electronic medical record, practice management, patient engagement, billing,

teleradiology, business intelligence, and consulting solutions.

26.     Experity continues to publicly represent, among many other

representations, that its proprietary software and accompanying Experity support

will:

- "Streamline operations, improve patient experience, optimize revenue, and put your urgent care clinic at the center of on-demand healthcare in the community."

- "Optimize [Urgent Care Providers'] Clinic & Business Outcomes Using Transformative Urgent Care Software."

- Implement an "operating system [that] works seamlessly to improve urgent care for [urgent care providers] and [their] patients."

- Be a "solution built for urgent care" that "accounts for [providers'] most frequent types of visits and what makes [the provider's] specific workflow most efficient so it can automate for a truly intuitive system."

- Enable providers to "Optimize [Their] Revenue with Confidence," although "[c]omplexities around urgent care billing, coding, payer contracts, and compliance often prevent clinics from getting the reimbursement they deserve."

- "[H]elp" because "[i]t shouldn't be so hard to get paid."

- Enable providers to "[r]educe billing and coding complexities so [they] get paid what [they have] earned. With proven best practices and built-in efficiencies, plus flexible tiered service levels, [providers will] experience fast, clean collections—and control [their] bottom line."

- Include proprietary Revenue Cycle Management software and services that "[m]anage the complexities around urgent care coding, billing, and payer contracts."

- Enable providers to "get reimbursed faster with our RCM services."

- Enable providers to "Optimize Revenue, Simplify Coding, and Control Your Bottom Line."

- Enable providers to "best meet the demands of the evolving on-demand space and deliver high-quality, high-velocity care by streamlining operations, improving patient experiences, and optimizing revenue."

[https://www.experityhealth.com/, https://www.experityhealth.com/urgent-care-

software-suite/revenue-cycle-management/,

https://www.experityhealth.com/urgent-care-software-suite/]

## II.   Experity and UM Urgent Care entered into the Agreement and Service Order.

27.   On February 28, 2020, UM Urgent Care entered into the Agreement. A copy of the Master Services Agreement is attached as Exhibit 1.

28.   Also on February 28, 2020, UM Urgent Care and Experity agreed on the RCM Addendum.  A copy of the Supplemental Terms for Revenue Cycle Management Services Addendum is attached as Exhibit 2.

29.   Also on February 28, 2020, UM Urgent Care and Experity entered into a Service Order.  A copy of the Service Order is attached as Exhibit 3.

30.   On March 5, 2020, UM Urgent Care and Experity entered into a First Amendment to Experity Master Service and License Agreement (the "First Amendment").  The First Amendment added an insurance obligation coverage obligation to the Agreement.  A copy of the First Amendment is attached as Exhibit 4.

31.   The Agreement, Addendum, and Service Order are governed by and interpreted under the laws of Maryland, without giving effect to any conflicts of laws principles that require the application of the law of a different jurisdiction.

32.   The Agreement provides that any causes of action between the parties arising from or in relation to this Agreement will be brought exclusively in the state or federal courts located in the State of Maryland.

33.   The term of the agreement was 18 months.

34.   The Agreement required Experity to provide revenue cycle management services with respect to nine clinic locations in Maryland, located in:

- Aberdeen;

- Belvedere Square (in Baltimore);

- Denton;

- Dundalk;

- Easton;

- Fallston;

- Forest Hill;

- Phoenix; and

- The Rotunda (in Baltimore).

35.     In addition, Experity provided revenue cycle management services to certain UM Urgent Care telehealth operations.

36.     The Agreement provided for UM Urgent Care's appointment of Experity as attorney-in-fact to bill UM Urgent Care's patients, in UM Urgent Care's name and on UM Urgent Care's behalf, for all claims for payment for all billable goods sold and medical services provided or arranged by UM Urgent Care or UM Urgent Care's agents to patients, unless that billing would violate law.

37.     The Agreement required Experity to prepare, process, and submit claims to commercial and governmental payers.

38.     The Agreement required Experity to perform "such Services consistent with its internal operational and compliance activities and functions, and using its best efforts to obtain reimbursement for [UM Urgent Care's] charges for clinical procedures and medical services provided to UM Urgent Care's] patients."

39.     Experity's obligations under the Agreement and RCM Addendum
included providing the following services to UM Urgent Care (defined, collectively,
by the RCM Addendum as the "Services"):

2.1     Process and submit [UM Urgent Care's] claims to employers,
patients, insurance companies, and other third party payers
(each, a "Payer").  Whenever possible, Experity will process and
transmit claims electronically.

2.2     At Experity's reasonable discretion, submit claims through
electronic claims clearinghouse(s) of Experity's choosing.

2.3     When available, make applications to applicable insurance
carriers and/or clearinghouses so that [UM Urgent Care's]
claims may be filed electronically.

2.4     Use reasonable efforts to process and transmit claims within
three (3) business days of receipt of complete, error-free
documentation necessary for billing such claims. . . .

2.5     Maintain complete and accurate accounts receivable records for
[UM Urgent Care].

2.6     Contact employers, patients, insurance companies, and other
Payers for the purpose of gathering information required to
submit claims and maintain patient accounts. . . .

2.7     Process at least one (1) past due notification for patient
responsible balances.

2.8     Advise [UM Urgent Care] of overdue status and recommend
when collection procedures should be initiated.  At [UM Urgent
Care's] request, Experity will process those accounts for which
collection procedures have been initiated by the collection
agency of [UM Urgent Care's] choosing ("Collection Accounts")
at the rate set forth in this Service Order.

2.9     Notify [UM Urgent Care] of all accounts that are in collection
status, and if requested by [UM Urgent Care] submit a
summary report of those accounts on a quarterly basis.

2.10    Use commercially reasonable efforts to maintain compliance
with federal, state, and private insurance carrier rules,

regulations, and guidelines with respect to third party billing services.

2.11   Forward to [UM Urgent Care] in a timely manner all requests for records received on behalf of [UM Urgent Care]. . . .

2.12   Experity shall be responsible for ensuring Provider billing and collections are correctly attributed to the appropriate entities for which the Provider rendered services.  Experity will defend, indemnify and hold [UM Urgent Care] harmless for any third party claims, damages or cause of action arising out of Experity's breach of this provision.

3.8   Experity shall re-submit, at Experity's expense, any inaccurate reports or claims, provided that [UM Urgent Care] provides verification of inaccuracy of any such report or claim, and provided further that such inaccuracies were caused solely as a result of Experity's performance.

40.   The Agreement further required Experity to provide the following

services to UM Urgent Care:

- Bill Run Management: Management of claims through the Experity system. Process includes review and cleanup of system edits, including In Limbo.

- Pending Claims Maintenance: Process is utilized to control release of claims during the provider payer enrollment process and ensure optimal in-network processing.

- Electronic Claim Submission: Submission and reconciliation of electronic claims through the clearinghouse payer.  Process ensures verification of payer acknowledgement.

- Claim Rejection Resolution: Review, correction and resubmission of electronic claims rejected by clearinghouse or payer scrubbing.

- Paper claim submission: Printing and mailing of paper claims with required documentation.

- Work Comp Claims & Attachments: Paper and/or electronic claim submission along with the attachments of all applicable notes required by the work comp payer.

- Patient Statement & Collection Letter Submission: Printing and mailing of patient statements and pre-collection letters.

- Electronic Payment Posting: Posting and reconciliation of electronic payment files.

- Lockbox Payment Posting: Posting and reconciliation of paper payments (E08) received via bank lockbox. EO8 images will be loaded into PM.  Experity requires "read only" access to deposit bank account.

- Non-Lockbox Payment Posting: Posting of paper third-party payments received by [UM Urgent Care].

- Denial Management: Identifying, categorizing, routing and tracking of denied claims to resolution team for review and resolution.

- Denial Resolution: Review, research, appeal and resolution of denied claims. Documentation of denial and A/R follow up activities.  Certain items may require clinic participation (i.e. authorization or missing documentation).

- Insurance Receivable Follow Up: Confirming the status of submitted unpaid claims.  Process includes correction and/or resubmission as necessary to support payer processing.

- Patient Accounts Receivable Management: Management of patient accounts receivable including treatment of patient unapplied and unallocated credit balances, oversight of the statement and collections process and administration of bad debt procedures for transfer to third-party collection agency.

41.    The Agreement obligated Experity to use its best efforts to obtain reimbursement for UM Urgent Care's charges for clinical procedures and medical services provided to UM Urgent Care's patients.

42.    Experity provided to UM Urgent Care certain revenue cycle management services, but Experity materially failed to perform its obligations and provided to UM Urgent Care inaccurate information, omissions of material information, misstatements, and misrepresentations.

14

43.    Among the services Experity agreed to provide were the following, which it marketed as "The Experity Solution" to providers' revenue cycle management:

- VelociDoc® EMR;
- Chartlet®;
- Practice Management;
- eRx;
- ExitCare® (patient discharge instructions);
- Referral Management;
- eFaxing;
- Report Generation and Data Analytics;
- Software Integration (Radlink Radiology, Quest and LabCorp, MD Scripts Dispensing, Teleradiology Specialists);
- Electronic Data Interface (EDI) (electronic billing);
- Electronic Remittance (ERA) (electronic EOB);
- Real Time Eligibility (RTE);
- ZipPay;
- PaymentMate;
- Storage Velocity (includes indexing/storage of scanned documents);
- Database backup;
- Software maintenance;
- Servers (includes upgrades and updates);
- Database Licenses (includes upgrades and updates);
- Full 365-day, 7am-11pm CST US-based technical support; and
- FindUrgentCaro.com (listing in directory).

44.     In exchange for Experity's providing to UM Urgent Care Revenue Cycle Management Services, UM Urgent Care agreed to pay a fee.

45.     UM Urgent Care satisfied all contractual obligations to pay the required fee for the UM Urgent Care Revenue Cycle Management Services.

46.     Experity further agreed to provide Legacy accounts receivable Cycle Management Fee services.

47.     In exchange for Experity's providing to UM Urgent Care Legacy accounts receivable Cycle Management Fee services, UM Urgent Care agreed to pay a fee.

48.     UM Urgent Care satisfied all contractual obligations to pay the required fee for the UM Urgent Care Legacy accounts receivable Cycle Management Services.

**III.   Experity provided regular reports to UM Urgent Care, which contained material inaccurate information, omissions, misstatements, and misrepresentations.**

49.     Experity provided to UM Urgent Care regular reports, including Revenue Cycle Management Scorecards ("RCM Scorecards), Revenue Cycle Management Client Data Packs ("RCM Client Data Packs"), and the Experity Revenue Cycle Management Dashboard ("RCM Dashboard").

50.     The RCM Scorecards, RCM Client Data Packs, and RCM Dashboard that Experity provided to UM Urgent Care contained material inaccurate information, omissions, misstatements, and misrepresentations.

51.    Experity regularly provided the RCM Scorecards late, well after they were due.  Despite repeated requests by UM Urgent Care for consistent, timely delivery of the RCM Scorecards, Experity continued to deliver RCM Scorecards late.

52.    Experity's untimely delivery of the RCM Scorecards impaired UM Urgent Care's ability to timely identify and address errors, omissions, and other issues relating to the RCM Scorecards.

53.    In addition, the RCM Scorecards, RCM Client Data Packs, RCM Dashboards provided by Experity regularly contained incorrect information.  Despite repeated good faith efforts by UM Urgent Care, Experity failed to address the incorrect information and failed to correct incorrect information in subsequent reports.

54.    Among the inaccurate information, omissions, misstatements, and misrepresentations contained in the RCM Scorecards, RCM Dashboard, and RCM Client Data Pack were inaccurate information, omissions, misstatements, and misrepresentations regarding the following critical data:

- Accounts receivable;
- Visit counts;
- Total charges; and
- Visits with charges on hold.

55.    Among the inaccurate information, omissions, misstatements, and misrepresentations concerning accounts receivable were representations of the following:

- Total accounts receivable;

- Accounts receivable trends;

- Days aging of accounts receivable;

- Days aging of accounts receivable trends;

- Accounts receivable clearance rates; and

- Accounts receivable clearance rates trends.

56.    This data was material to UM Urgent Care's understanding of its claims and its collection of charges.

57.    Experity submitted the RCM Scorecards, RCM Dashboard, and RCM Client Data Pack on behalf of UM Urgent Care to UM Urgent Care under circumstances where the data provided by UM Urgent Care or UM Urgent Care's agent to Experity was accurate, valid and complete.

58.    Experity's failure to provide accurate information to UM Urgent Care caused UM Urgent Care to suffer loss, damages, and expenses.

59.    Experity concealed its breaches of its obligations to UM Urgent Care in multiple ways, including the following:

- Experity refused to respond to direct inquiries from UM Urgent Care that could have revealed its failures;

- Experity failed to remedy issues raised by UM Urgent Care, while repeatedly misrepresenting that it had remedied them;

- Experity stalled and delayed in responding to issues UM Urgent Care raised repeatedly; and

- Experity provided UM Urgent Care with flawed, untimely, and inaccurate information throughout the term of the Agreement, leading to a systemic misrepresentation of accounts receivable and other critical revenue cycle management data.

60.     Had Experity provided adequate services and submitted accurate information, Experity would have collected hundreds of thousands of dollars of additional charges on behalf of UM Urgent Care.

61.     Had Experity provided accurate and timely information—rather than hiding it—UM Urgent Care could have understood and identified these failures and, perhaps, had an opportunity to timely address them.  By failing to perform and then hiding its failure, Experity rendered, on information and belief, more than $700,000 of otherwise collectable charges uncollectable.

## IV.    Experity breached its obligations to UM Urgent Care.

62.     Experity breached its obligations to UM Urgent Care.

63.     Experity's nonperformance resulted from its own failures, not any failures of UM Urgent Care.

64.     The claims-related and payor-related data and related information UM Urgent Care provided to Experity was accurate, valid, and complete.

65.     Experity's reporting and submissions were materially false and misleading.  Experity's breaches of contract and intentional submission of false information materially harmed UM Urgent Care, causing the loss of, on information and belief, more than $700,000 in revenue that should have been collected.

66.     Experity failed to perform material obligations imposed on it by the Agreement and Service Order, including failing to timely and accurately submit claims; failing to collect full rates for claims, instead accepting payments for less

than applicable rates, with knowledge that the payments accepted were lower than the applicable rates; failing to timely submit accurate claims under the federal government's Health Resources & Services Administration's COVID Uninsured Program, despite knowing that it had failed to submit appropriate claims; failing to timely submit a number of claims to insurer and payer United Healthcare, which claims were never paid, despite Experity's having all necessary information to submit full and valid claims; failing to collect full amounts due, with knowledge that it had received only partial payment for certain claims; and providing periodic reporting to UM Urgent care that was inaccurate and misleading, intentionally preventing UM Urgent Care from identifying Experity's breaches of its contractual obligations.

67.     Experity's material breaches constituted gross negligence and willful misconduct.

68.     Experity failed to timely submit certain charges.

69.     Experity incorrectly submitted certain claims as Fee for Service when the claims should have been charged at a case rate, rendering them uncollectable.

70.     Experity incorrectly submitted certain claims at a case rate when those claims should have been submitted as Fee for Service, rendering them uncollectable.

71.     Experity failed to submit certain claims to payors, rendering them uncollectable.

72.     Experity asserted falsely that credentialling issues of UM Urgent Care prevented it from collecting revenue on behalf of UM Urgent Care when no credentialing matters existed that would have rendered these claims uncollectable.

73.     UM Urgent Care repeatedly, throughout the term of the Agreement, offered to provide any information needed to facilitate Experity's performance of its obligations under the Agreement.

74.     Experity failed to obtain payment for certain charges at full and appropriate rates, leaving certain claims underpaid.

75.     UM Urgent Care provided Experity with accurate charge and rate information for each payor.  This fully satisfied any obligations UM Urgent Care had and provided Experity all information it needed to timely submit charges at the appropriate payment rate.

76.     Nonetheless, Experity failed to collect certain charges at full and appropriate rates.

77.     UM Urgent Care timely informed Experity of the rates for its claims. Experity could have timely and accurately submitted claims at the appropriate rate.

78.     Experity had an obligation to submit these claims, and its admitted failure to do so caused the claims not to be paid and UM Urgent Care to lose revenue.

79.     Experity failed to timely submit certain claims to the HRSA COVID Uninsured program.

80.     UM Urgent Care timely obtained member identifications, such that Experity could have submitted claims on time and without error.  Experity failed to do so.

81.     Experity failed to timely submit certain claims to United Healthcare.

82.     UM Urgent Care entered into an agreement with United Healthcare, pursuant to which United Healthcare would pay $136 per claim, effective July 1, 2021.  Nonetheless, after July 1, 2021, Experity held and did not submit a significant number of United Healthcare claims with dates of service after July 1, 2021 for "contract pending" or "new Tax ID pending."  Experity's failure to timely submit those charges rendered them uncollectable.

83.     Experity harmed UM Urgent Care by submitting to UM Urgent Care information that was inaccurate.  Had Experity provided accurate information, UM Urgent Care could have identified unsubmitted claims and underpaid claims and timely addressed issues.  Experity's regular and systematic submission of inaccurate information caused UM Urgent Care direct harm.

84.     UM Urgent Care appropriately performed all of its duties and responsibilities under the Agreement.

## V.     UM Urgent Care suffered harm as a result of the breaches and wrongful conduct of Experity.

85.     Experity's breaches of its obligations to UM Urgent Care imposed substantial harm on UM Urgent Care.  On information and belief, total claims that should have been collected by Experity but were not exceed $700,000.

**VI.     The Parties terminated the Agreement and Service Order, effective September 1, 2021.**

86.     By notice of May 24, 2021, UM Urgent Care provided timely and effective notice of non-renewal of the RCM Agreement, effective August 31, 2021. A copy of this notice of voluntary termination of services is attached as Exhibit 5.

87.     On August 31, 2021, UM Urgent Care and Experity entered into a Decommission Agreement .  A copy of the Decommission Agreement is attached as Exhibit 6.

88.     The Decommission Agreement confirmed termination of the Agreement and Service Order, effective September 1, 2021.

**VII.    Experity agreed and is obligated to indemnify UM Urgent Care for its losses, damages, and expenses.**

89.     Experity's agreements with UM Urgent Care confirm its obligations to make UM Urgent Care whole.

90.     The Decommission Agreement incorporates each provision of Section 8 of the Agreement and broadens its applicability:

> Notwithstanding the foregoing, in accordance with paragraph 8 of the RCM Addendum, to the extent Client suffers any loss, damages or expense arising from inaccurate information submitted by Experity on behalf of Client under circumstances where the data provided by Client or Client's agent to Experity was accurate, valid and complete, Experity shall defend, indemnify and hold Client harmless for such losses, damages and expenses.

91.     The Decommission Agreement's express reference to "any loss, damages or expense" extends Experity's liability beyond claims arising only out of

negligence, gross negligence, or willful misconduct.  All breaches arising from inaccurate information submitted by Experity are compensable.

92.     The inaccurate information submitted by Experity prevented UM Urgent Care from knowing of, understanding, or addressing with Experity the failures of Experity to timely, accurately, and appropriately bill for services.

93.     The RCM Addendum itself, even if it were not superseded by the Decommission Agreement, confirms Experity's obligations.

94.     Section 8 of the RCM Addendum requires that Experity:

> shall indemnify and hold Client harmless from any liability, loss, claim, lawsuit, injury or cost, damage, or expense whatsoever, including reasonable attorneys' fees and court costs: (a) arising from inaccurate information submitted by Experity on behalf of Client under circumstances where the data provided by Client or Client's Agents to Experity was accurate, valid and complete; . . . or, (d) arising out of Experity's negligence, willful or intentional misconduct or intentional breach of this Agreement.

95.     Section 8 of the RCM Addendum is mandatory and applies without exception.  Experity's repeated breaches of its obligations, its submission of inaccurate information, its refusal to consistently and effectively respond to inquiries or accept offers of assistance from UM Urgent Care, and its failure to timely and accurately submit charges satisfies the standard to impose the indemnification obligation.

96.     Experity is liable to UM Urgent Care for consequential damages, as well as an award of attorneys' fees.

97.     UM Urgent Care exercised its right to terminate the agreement by providing notice of its intent to not renew at least 30 days prior to the end of the

written term.  Therefore, the Agreement and Service Order terminated on August 31, 2021.

98.     After termination of the Agreement and Service Order, UM Urgent Care first learned that Experity had repeatedly and knowingly violated the Agreement and Service Order and, further, that Experity had concealed its repeated breaches so UM Urgent Care was not able to discover them.

99.     Experity's breaches and failures to satisfy its obligations to UM Urgent Care directly caused UM Urgent Care to suffer damages, on information and belief substantially in excess of $700,000.

## COUNT I
## Breach of Contract

100.    UM Urgent Care restates and realleges the allegations set forth above and incorporates them by reference as if fully set forth in this Count.

101.    The Master Service and License Agreement, as amended, incorporating the "Supplemental Terms for Revenue Cycle Management Services Addendum," and the Service Order between UM Urgent Care and Experity is a valid, binding, and enforceable contract.

102.    In exchange for good and valuable consideration, Experity agreed to specific contractual obligations to timely, accurately, and completely submit charges on behalf of UM Urgent Care.

103.    UM Urgent Care performed its obligations under the Agreement, including but not limited to paying Experity compensation, or was excused from performance of certain obligations by reason of Experity's breach.

871233

25

104.    Experity breached the Agreement.

105.    Experity's reporting and submissions were materially false and misleading.

106.    Experity failed to perform material obligations imposed on it by the Agreement and Service Order, including failing to timely and accurately submit claims; failing to collect full rates for claims, instead accepting payments for less than applicable rates, with knowledge that the payments accepted were lower than the applicable rates; failing to timely submit accurate claims under the federal government's Health Resources & Services Administration's COVID Uninsured Program, despite knowing that it had failed to submit appropriate claims; failing to timely submit a number of claims to insurer and payer United Healthcare, which claims were never paid, despite Experity's having all necessary information to submit full and valid claims; failing to collect full amounts due, with knowledge that it had received only partial payment for certain claims; and providing periodic reporting to UM Urgent care that was inaccurate and misleading, intentionally preventing UM Urgent Care from identifying Experity's breaches of its contractual obligations.

107.    As a direct and proximate result of Experity's breaches of contract and intentional submission of inaccurate information, UM Urgent Care has suffered harm and damages in an amount to be proven at trial.

**WHEREFORE, UM Urgent Care respectfully requests that the Court grant:**

1.      Compensatory damages in an amount to be proven at trial for the actual loss caused by Experity's breach of contract;

2.      Consequential damages in an amount to be proven at trial for the actual loss caused by Experity's breach of contract;

3.      Reasonable attorneys' fees and other costs and expenses incurred in pursuing Experity's breaches of its obligations;

4.      Pre-judgment and post-judgment interest according to law; and

5.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

UMMS Ambulatory Care, LLC respectfully demands that its allegations be tried before a jury.

Respectfully submitted,

GALLAGHER, EVELIUS & JONES LLP

Mark S. Saudek (Fed Bar No. 23963)
Ella R. Aiken (Fed Bar No. 30613)
Rose C.A. Woolson (Fed. Bar No. 30977)
218 North Charles Street, Suite 400
Baltimore, MD 21201
tel. 410-727-7702
fax 410-468-2786
msaudek@gejlaw.com
eaiken@gejlaw.com
rwoolson@gejlaw.com
*Counsel to Plaintiff UMMS Ambulatory Care, LLC d/b/a UM Urgent Care*

Date: July 22, 2024

**Exhibits**

1.  February 28, 2020 Master Services Agreement

2.  February 28, 2020 Supplemental Terms for Revenue Cycle Management
    Services Addendum

3.  February 28, 2020 Service Order

4.  March 5, 2020 First Amendment to Experity Master Service and License
    Agreement

5.  May 24, 2021 Notice of Voluntary Termination of RCM Services

6.  August 31, 2021 Decommission Agreement